Thomas Worcester, Inc., et al. [1] v. Commissioner. Thomas Worcester, Inc. v. Commissioner
Docket Nos. 727-63 - 736-63.
United States Tax Court
T.C. Memo 1965-199; 1965 Tax Ct. Memo LEXIS 131; 24 T.C.M. (CCH) 1021; T.C.M. (RIA) 65199; July 22, 1965
Gerald T. O'Hara, 53 State St., Boston, Mass., and Calvin P. Bartlett, for the petitioners. Frederick A. Griffen, for the respondent. MULRONEY Memorandum Findings of Fact and Opinion MULRONEY, Judge: Respondent determined the following deficiencies in income tax *132 and additions to tax: Additions to
Fiscal Year
Income
tax under
Docket
Ended
Tax
§ 293(b),
Petitioner
No.
July 31
Deficiency
1939 I.R.C.
Thomas Worcester, Inc.
727-63
1948
$ 7,046.60
$ 3,523.30
728-63
1950
10,240.91
5,120.46
729-63
1951
114,945.04
57,472.52
730-63
1952
*
13,443.22
Additions to tax -
Docket
Tax
1939 I.R.C.
Petitioner
No.
Year
Deficiency
§ 293(b)
§ 294(d)(2)
Thomas Worcester
734-63
1947
$ 4,030.14
$ 2,015.07
$ 221.19
Thomas Worcester,
Elisabeth
B. Worcester
735-63
1948
1,815.28
907.64
74.39
736-63
1949
54,251.98
27,125.99
3,404.11
731-63
1950
26,528.28
13,264.14
1,789.27
732-63
1951
18,594.03
9,297.02
1,077.18
733-63
1952
4,010.20
2,005.10
332.71
The issues are (1) whether certain amounts were properly includable in the taxable income of the individual petitioners in the years 1947 through 1952; (2) whether the corporate petitioner is entitled to deduct certain payments as ordinary and *133 necessary business deductions in the years here involved; (3) whether any part of the deficiency in the individual petitioners' income tax for each of the years 1947 through 1952 was due to fraud with intent to evade tax; (4) whether the individual petitioners are liable for additions to tax under section 294(d)(2) of the Internal Revenue Code of 1939[2] for the years 1947 through 1952; and (5) whether in connection with the individual petitioners the years 1947 through 1952 are barred by the statute of limitations. The corporate petitioner has conceded that it is liable for additions to tax under section 293(b) for the years 1948, 1950, 1951 and 1952. Findings of Fact Some of the facts were stipulated and they are so found. Thomas Worcester and Elisabeth B. Worcester, husband and wife, are residents of Waltham, Massachusetts. Thomas filed an individual income tax return for 1947 and filed joint income tax returns with Elisabeth for the years 1948 through 1952 with the collector of internal revenue for the district of Massachusetts or with the district director of internal *134 revenue in Boston, Massachusetts. In 1924 Thomas became a partner in his father's engineering company, J. R. Worcester & Co., which had been founded in 1893. Thomas Worcester, Inc., hereinafter sometimes called the corporation, was incorporated under the laws of Massachusetts on May 31, 1946 and, during all times here relevant, had its principal place of business in Boston, Massachusetts. The corporation was organized for the purpose of engaging in the performance of architectural and engineering services and in construction work. The corporation reported its taxable income on a completed-contracts basis and its taxable year was the fiscal year ending July 31. The corporation filed its corporation income tax returns for its fiscal years ended July 31, 1948 through 1952 with the collector of internal revenue or the district director of internal revenue in Boston, Massachusetts. The corporation returns for the fiscal years ended July 31, 1949 through 1952 were consolidated returns on which the Thomas Worcester Construction Co. was included as an affiliated corporation. The authorized capital stock of Thomas Worcester, Inc. was 1,000 shares of Class A non-voting common stock, par *135 value of $100 per share, and 1,000 shares of common stock, par value of $100 per share. Thomas Worcester and his wife owned from 53 percent to 69 percent of the corporate voting stock during the fiscal years ended July 31, 1946 through 1953. Thomas was president, treasurer and a director of the corporation during the years here relevant. Philip W. Murphy was employed by Thomas Worcester, Inc. in 1946 as its chief accountant and by 1949 he was comptroller of the corporation. Partnership returns were filed by Ross Turner and Co. for the fiscal years ended October 31, 1949 through 1951 with the collector of internal revenue for the district of Massachusetts. The returns, which stated that the partnership's date of organization was July 14, 1949, showed gross receipts from business (indicated as sales agents) in the amounts of $49,885 and $58,255 for the fiscal years ended October 31, 1949 and 1950, respectively, and no receipts for the fiscal year ended October 31, 1951. The returns showed Thomas Worcester and Philip W. Murphy as partners and indicated that their shares of the partnership net income for the fiscal years ended October 21, 1949 and 1950 were as follows: Fiscal Year
Fiscal Year
ended
ended
10/31/49
10/31/50
Thomas Worcester
$24,863.35
$28,568.77
Philip W. Murphy
24,863.35
28,568.77
*136 State Street Sales, Inc. was incorporated under the laws of Massachusetts on February 9, 1950. The charter and articles of incorporation, which were later amended on March 27, 1950 to include the operation of a restaurant, authorized the corporation of a restaurant, authorized the corporation to engage in architectural, engineering and construction work. The only shares of stock issued were two 100-share stock certificates (no par common) issued to Philip W. Murphy on February 9, 1950. On the same date Murphy transferred one 100-share stock certificate to Thomas Worcester and also gave an option to Thomas Worcester to purchase the second 100-share stock certificate. The option was exercised by Thomas Worcester on November 17, 1950. State Street Sales, Inc. filed its returns for the fiscal years ended November 30, 1950 through 1952 (including an amended return for the fiscal year ended November 30, 1950) with the collector of internal revenue for the district of Massachusetts or the district director of internal revenue, Boston, Massachusetts. From October through December 1947 Thomas Worcester, Inc. issued four checks totaling $5,500 payable to Murphy and charged to various construction *137 jobs as travel expense. Murphy cashed these checks and turned the proceeds over to Thomas Worcester. During the fiscal years ended July 31, 1947 and 1948 Thomas Worcester was paid the respective amounts of $200 and $5,200 by Thomas Worcester, Inc., which were reflected on the corporation's books as reimbursements of travel expenses. The first nine payments were in odd amounts which averaged out to $100 per week and the subsequent payments were in amounts of $100 per week. During the fiscal year ended July 31, 1949 the corporation paid Thomas Worcester $6,400 as reimbursement of travel expenses, and during each of the fiscal years ended July 31, 1950, 1951 and 1952 the corporation paid him $7,800, treating the payments on the corporate books as reimbursements of travel expenses. Beginning with the payment on February 20, 1949 the payments to Thomas Worcester amounted to $150 per week. These amounts paid over the fiscal years ended July 31, 1947 through 1952, which were not made subject to withholding taxes by the corporation, were included in the weekly payroll checks paid to Thomas Worcester. During the fiscal year ended July 31, 1949, Thomas Worcester, Inc. issued the following *138 checks: Date
Amount
Payee
Acct. Charged
9/15/48
$1,000
Ruth Bullock
Overhead Acct. (travel)
11/ 9/48
500
Cash
Completed job
12/16/48
2,250
Philip W. Murphy
Overhead Acct. (material)
2/ 2/49
850
Ruth Bullock
Overhead Acct. (material)
Ruth Bullock, an employee of the corporation from about September 1947 to October 1949, cashed the $1,000, $500 and $850 checks and gave the proceeds to Murphy, who in turn gave the cash to Thomas Worcester. Murphy also gave the proceeds of the $2,250 check to Thomas Worcester. Early in 1949 the corporation on occasion would issue a payroll check in excess of the actual payroll on a particular construction job. The excess was given to Murphy, who in turn would give it to Thomas Worcester. During the fiscal years ended July 31, 1949 and 1950, Thomas Worcester, Inc. issued the following checks to the partnership, Ross Turner and Co.: Date
Amount
7/14/49
$ 15,000
7/20/49
11,385
8/15/49
7,500
9/27/49
2,500
10/ 3/49
5,500
10/21/49
5,000
11/ 7/49
10,885
11/14/49
5,277
11/21/49
10,000
12/23/49
12,093
1/17/50
20,000
Total
$105,140 These checks were issued to Ross Turner and *139 Co. following the submission of invoices dated June 8, 1949 in the amount of $52,700 and November 1, 1949 in the amount of $52,370, billing Thomas Worcester, Inc. for engineering services allegedly performed by Ross Turner and Co. Actually, none of the above checks represented payment for services performed by Ross Turner and Co. for the corporation. The amounts paid to Ross Turner and Co. were charged to completed jobs and claimed as deductible expenses by the corporation. From July 15, 1949 through February 1, 1950, numerous checks were issued by Ross Turner and Co. totaling $102,750, with Murphy indicated as payee on most of such checks. Murphy retained none of the Ross Turner funds except for an amount sufficient to pay the tax on the partnership distributions which were reported by Murphy in his returns. The proceeds of the above checks were given to Thomas Worcester, who placed them in his safe deposit box. During its fiscal years ended July 31, 1950, 1951 and 1952 (from January 31, 1950 to February 19, 1952) Thomas Worcester, Inc. issued checks totaling $173,300 which, with the exception of one check made payable to R. T. Donnellan, were all made payable to State Street *140 Sales, Inc. All of these checks were issued following the submission of invoices billing Thomas Worcester, Inc. for selling expenses allegedly performed on its behalf. Actually, none of the above checks represented payment for services performed by State Street Sales, Inc. on behalf of Thomas Worcester, Inc. The corporation charged the disbursements made to State Street Sales, Inc. to completed jobs and claimed them as deductible expenses. The proceeds of the checks issued by the corporation were either retained by State Street Sales, Inc. or were drawn from the latter corporation by checks made payable to various payees and then given to Thomas Worcester. From February 14, 1950 through March 14, 1951, checks were issued by State Street Sales, Inc. to Murphy and other payees totaling $66,738.48. Murphy reported the amounts payable to him from State Street Sales, Inc. on his return for 1950 as salary and, except for the amount of the tax payable on such reported salary, Murphy gave the proceeds of the State Street Sales, Inc. checks to Thomas Worcester. The proceeds of the checks payable to the other payees mentioned above were also given to Thomas Worcester. About June 1950 State *141 Street Sales, Inc. started to operate a restaurant in Natick, Massachusetts. From January 12, 1950 to April 30, 1952, Thomas Worcester, Inc. issued a number of checks to eight payees totaling $40,400. These payments were charged by the corporation to completed jobs and claimed as deductible expenses. None of these payees performed any services for the corporation. On February 10, 1950, Thomas Worcester, Inc. and Francis C. Norton executed a contract which provided that Norton was engaged as assistant to the corporation's president and would receive 10 percent of the gross engineering fees or architectural fees received by the corporation on work obtained by Norton. If such fees were paid to the corporation in installments or in progress payments, the contract specified that "in that event a sum equal to ten per centum (10%) of the installment or progress payment shall be due and payable to [Norton] when and as received by the [corporation]." The contract also stated that the corporation was indebted to Norton for $32,000 payable over 24 monthly installments. On December 1, 1950 the same parties executed a second contract which contained similar provisions to the contract *142 of February 10, 1950 (which was terminated) except that the new contract stated that the corporation was indebted to Norton for the amount of $46,000 payable over 24 monthly installments. On October 4, 1951 the contract of December 1, 1950 was modified, providing that Norton would discontinue any further solicitation of work for the corporation in New Hampshire and Maine but that Norton would receive a 5 percent commission on any future fees (within a limited period) received by the corporation from work already initiated by Norton in those states. The corporation made the following gross payments to FrancisC. Norton or to his wife, Mary P. Norton, for services performed by Francis on behalf of the corporation: 1950, $15,246.66; 1951, $22,999.92; and 1952, $21,083.26. These payments were made by check and they were recorded in the corporation's payroll records. In addition, the corporation made commission payments by check to Francis in the following amounts: 1950, $10,000 and 1951, $6,000. Francis C. and Mary P. Norton reported the following amounts received from Thomas Worcester, Inc. on their joint income tax returns for the years 1949 through 1952: Year
Amount
1949
1950
$25,246.66
1951
30,956.85
1952
21,083.26
*143 In his 1949 return, Francis C. Norton stated he was employed by a firm of general contractors to perform contact and promotion work. Francis died on January 1, 1952. In 1949 contracts became available from the Commonwealth of Massachusetts in connection with an extensive program financed by a bond issue of $100,000,000. During the period of about 1949 through 1952 Thomas Worcester, Inc. acquired jobs, some of which were identified as Port of Boston-Mystic Pier, Chelsea Housing, DPW-Plymouth Bridges, DPW-Sullivan Square, DPW-Route 128, New London Housing, Gloucester Housing, DPW-Waverley, Clinton Housing, Bedford Sewer, Boston-Refuse Report, Concord, N.H.-Garage, MDC-McGrath Highway, David Nassit-Warehouse, DPW-Winchester, DPW-Springfield, MDC-River Street, MDC-Anderson Bridge, MDC-Western Avenue, Boston-Copley Sq. Garage, Maine-Portland, DPW-Refuse Report, MDC-Swimming Pool, Barletta Co.-Waverly and DPW-Ft. Point Channel. The records of Thomas Worcester, Inc. identified these jobs as having been acquired by the partnership Ross Turner and Co. or by State Street Sales, Inc. The total billings on these jobs amounted to more than $3,000,000. On or about March 13, 1957, a grand jury *144 returned an indictment in the United States District Court for the District of Massachusetts charging in three separate counts that Thomas Worcester did wilfully and knowingly attempt to evade and defeat a large part of the Federal income tax due and owing by him and his wife for the years 1950, 1951 and 1952 by filing false and fraudulent joint income tax returns for each of those years in which he understated their joint net income and the income tax due for each of those years in violation of section 145(b) of the 1939 Internal Revenue Code. On or about March 19, 1957, Thomas Worcester was arraigned in the United States District Court for the District of Massachusetts and entered a plea of not guilty to the charges set forth against him in the above indictment. After a trial on the merits before Judge Wyzanski, sitting with a jury, Thomas Worcester was found guilty of violating the provisions of section 145(b) of the Internal Revenue Code of 1939 with respect to the income tax returns filed by Thomas Worcester and his wife for the years 1950, 1951 and 1952, as charged in the indictment. On September 21, 1960, the United States District Court entered its judgment of conviction *145 against Thomas Worcester in the criminal action. This judgment of guilt and conviction has never been modified and no appeal has been noted or taken therefrom, and the judgment therefore has become final and binding on Thomas Worcester. Respondent determined that the amount of $7,800 received by Thomas Worcester in 1947 from Thomas Worcester, Inc. for purported travel expense was taxable to him as dividend income; that the amount of $9,025 received by Thomas Worcester fromthomas Worcester, Inc. in 1948 as reported travel expenses was taxable as dividend income; that the aggregate amount of $112,799.12 (less the amount of $24,863.35 reported on the joint return as distributable profits from Ross Turner and Co.), representing purported selling and engineering expenses paid by Thomas Worcester, Inc. to Ross Turner and Co., as well as amounts received by Thomas Worcester from Thomas Worcester, Inc. as travel expenses, were taxable as dividend income to Thomas Worcester and his wife in 1949; and that the amounts paid by Thomas Worcester, Inc. to State Street Sales, Inc. in 1950, 1951 and 1952 as purported selling expenses, as well as the amounts paid to Thomas Worcester as travel expenses, *146 were taxable as dividends in those years to Thomas and his wife. [3] Respondent made allowances in his determinations for the amounts reported on the joint returns during this period as distributive shares of partnership income from Ross Turner and Co. or as salary income from State Street Sales, Inc. Respondent disallowed deductions claimed by Thomas Worcester, Inc. in the fiscal years ended July 31, 1948, 1950, 1951 and 1952 for overhead expenses or engineering expenses, and also disallowed deductions for certain payments made to Thomas Worcester during this period as reimbursements for travel expenses. A part of the deficiencies for each of the years 1947 (Thomas Worcester, individually) and 1948 through 1952 (Thomas and Elisabeth B. Worcester, jointly) was due to traud with intent to evade tax. The returns filed by Thomas Worcester, individually, for 1947 and by Thomas and Elisabeth, jointly, for the years 1948 through 1952 were false and fraudulent with intent to evade *147 tax. Opinion We do not believe that the petitioners, Thomas Worcester and his wife, have met their burden of showing that respondent's determinations for the years 1947 through 1952, except as to items noted later, were incorrect. We have carefully examined the evidence as to the various items included by respondent in their income during these years, including the checks in various amounts issued by the corporation to various payees (generally corporate employees) which were cashed and the proceeds turned over by such payees to Thomas, and the weekly checks [4] issued by the corporation to Thomas ostensibly as reimbursements for travel expenses. We are convinced that these amounts as determined by respondent were properly includible in petitioners' income during this period. It is abundantly clear from the *148 evidence, including the testimony of some of the payees of the checks, that these funds came into Thomas' hands. However, he attempted at the trial to show that he actually did expend certain amounts for travel and entertainment during the years 1947 through 1952 and, on brief, argued that at least to the extent he was able to account for such expenditures, the amounts paid to him by the corporation should not be included in his income. Petitioner's testimony as to these expenditures is unpersuasive. It consisted, for the most part, of a quick catalogue of trips to various job sites over these years and a wholly unsubstantiated estimate, usually in round figures, of the costs incurred on such trips. We are shown no receipts or records of these expenditures, and to our knowledge, none exist. Petitioner's estimates of his travel expenses incurred during this period range from about $900 to $1,700 which, of course, merely account for a portion of the amounts paid by the corporation to petitioner as reimbursements of travel expenses. [5] We sustain respondent's determination that the various amounts received by petitioner, either from the payees of the corporate checks or as purported *149 weekly reimbursements of travel expenses, are properly includable in petitioner's taxable income in their entirely during these years. We also agree with respondent that the large payments made by the corporation first to the partnership, Ross-Turner and Co., and then to the corporation, State Street Sales, Inc., are properly includable in petitioners' taxable income except as noted later in this opinion. These payments were made by the corporation for alleged engineering services or selling expenses which, as the stipulation shows, were never performed. It is clear that both the partnership and the corporation were devices used by petitioner to withdraw funds from the corporation and, at the same time, obtain deductions for the corporation for such withdrawals. Petitioner's position is that "all of the cash withdrawn from Ross-Turner and Co. and *150 State Street Sales, Inc. was paid to Mr. Norton, as a commission for obtaining engineering work for Thomas Worcester, Inc. and that part of this money was in turn paid by him to public officials as graft." We do not accept petitioner's explanation which, except for his unsupported testimony, is bolstered by nothing more substantial than broad insinuations based upon isolated bits of evidence. This explanation, that petitioner was a mere conduit for these cash funds, does not bear close scrutiny. A comparison of the total commissions received by the corporation on jobs which were purportedly obtained by Norton with the cash funds withdrawn from Ross-Turner and Co. and State Street Sales, Inc. and allegedly paid to Norton reveals, when the remaining evidence is taken into account, substantial amounts of cash that remain unaccounted for. Petitioner's story that the large amounts of cash which ended up in his safe deposit box were to meet Norton's demands for cash commissions seems to overlook the February 1950 contract (later amended) which explicitly set forth the terms of Norton's employment with the corporation and payments made by the corporation to Norton, by payroll checks or *151 by commission checks, in 1950, 1951 and 1952 of approximately $75,000. Respondent has allowed the corporation to deduct these salary and commission check payments to Norton and has also allowed corporate deductions for payments totaling about $57,000 made by check during this period at Norton's request to Norton's son, Norton's brother-in-law, to various public officials, and for improvements made on Norton's home. In other words, Norton's role with the corporation is fully explained by the contract and by the check payments made by the corporation to Norton or under his directions. There are other discrepancies in petitioner's explanation that the cash funds did not remain in his hands but, instead, were used to meet Norton's demand for cash commissions. For example, the evidence shows that the corporation billed its clients periodically and it is stipulated that the corporation reported its income on a completed-contracts basis. The contract with Norton, as well as some of the evidence, shows clearly that Norton would be paid only after the corporation received payments on billings on the jobs which Norton had obtained. Using this as a starting point and also taking into account *152 the actual dates when the periodic payments were received by the corporation, we find that large portions of the cash funds removed by Worcester from the corporation via Ross-Turner and Co. and State Street Sales, Inc. could not have been used to pay Norton's cash commissions. There are also inconsistencies in the testimony of Thomas Worcester as to the timing of the payments to Norton. We find, upon the record as a whole, that payments made by the corporation to Ross-Turner and Co. and State Street Sales, Inc. in the guise of engineering services or selling expenses were properly includable in petitioners' taxable income. We see no reason to treat the check issued by the corporation in October 1950 to R. T. Donnellan in the amount of $5,000 differently. It is stipulated that this check was charged to selling expenses which were spurious. The record indicates that Donnellan was an employee of the corporation at that time. We believe this check falls into the same pattern of checks issued by the corporation to State Street Sales, Inc. in 1950 and 1951 for selling expense services which were not in fact performed, and there is nothing in the record to indicate otherwise. As indicated *153 earlier, respondent has determined that the entire amounts paid by Thomas Worcester, Inc. to Ross-Turner and Co. and State Street Sales, Inc. are taxable to petitioners. Thomas Worcester and Murphy reported their distributive shares of income from the partnership Ross-Turner and Co. and also reported compensation received from State Street Sales, Inc. Respondent in his statutory notice has allowed for the amounts received by Worcester from Ross-Turner and Co. and State Street Sales, Inc. and reported on his income tax returns. However, the evidence shows that Murphy did not retain any of the payments reported by him as &ncome from Ross-Turner and Co. and from State Street Sales, Inc., but generally turned the proceeds back to Thomas Worcester, retaining only a sufficient amount to cover the taxes on the amounts reported in his returns by Murphy. We believe that respondent must also make an allowance for these amounts used to pay the taxes on the amounts supposedly received by Murphy. It is readily apparent that Murphy's role with Ross-Turner and Co. and State Street Sales, Inc. was purely an artificial one. He was merely a conduit of funds which were withdrawn from Thomas Worcester, *154 Inc. and which passed ultimately to Worcester. There is some suggestion in petitioners' brief that out of the total of $105,140 paid by Thomas Worcester, Inc. to Ross-Turner and Co. as spurious engineering expenses, the partnership made some few payments for expenses and for state taxes which should not be included in the amounts taxable as income to Thomas Worcester. The nature of these purported expenses is not established by this record and we see no justification for allowing them either as expense deductions or as exclusions from Worcester's taxable income. However, we feel that Worcester should be allowed a deduction for any payments of state taxes to Massachusetts paid in 1949 or 1950 out of the Ross-Turner and Co. funds. It also appears that certain amounts out of the total payments made by Thomas Worcester, Inc. to State Street Sales, Inc. were retained by the latter corporation to operate a restaurant beginning in June 1950. Petitioners argue that these amounts retained by State Street Sales, Inc. for its business operations cannot be included in their taxable income We do not agree. It is petitioners' mistaken notion that by including the total payments made by Thomas *155 Worcester, Inc. to State Street Sales, Inc. in petitioners' taxable income, the respondent is ignoring the separate taxable entity of State Street Sales, Inc. and treating that corporation as a sham. Respondent's position, with which we are in agreement, is that Worcester is taxable for the total amounts which he caused to be paid by Thomas Worcester, Inc. to his controlled corporation (State Street Sales, Inc.) as spurious selling expenses. These payments are treated as constructive dividends from Thomas Worcester, Inc. In effect, it is the same as if Worcester first withdrew these amounts from Thomas Worcester, Inc. and then contributed these amounts to State Street Sales, Inc. In either case, Worcester would be taxable on the entire amounts withdrawn from Thomas Worcester, Inc., and it is completely immaterial in this case that State Street Sales, Inc. retained some of these payments it received in order to conduct a business operation of its own. Since the separate identity of State Street Sales, Inc. is recognized, it follows that any operational losses incurred by that corporation in the restaurant business may be utilized only by the corporation and not by the individual petitioners. *156 It has been stipulated that in 1950 Thomas Worcester paid by check the sum of $8,500 to Hobbs & Worcester Co., Inc. and the sum of $3,000 to the Geoscope Corporation. Worcester argues on brief that he is entitled to a long-term capital loss in connection with the investment of $1,000 in the stock of Hobbs & Worcester Co., Inc. and a nonbusiness bad debt deduction for the loss on the loans of $7,500 to the corporation. He also claims he is entitled to a long-term capital loss on the sale of the stock in Geoscope Corporation. The evidence as to these items is vague and unsatisfactory. We have only the bare statements of Worcester who testified sketchily that the Hobbs & Worcester Co., Inc. venture was abandoned in 1951, and that he sold his Geoscope Corporation stock in 1951 for $1 to a "member of the group" who had invested in Geoscope Corporation. Worcester could not remember the purchaser's name. A loss may be deducted only in the year in which it is sustained, and there must be something more than the bare statement of the taxpayer to identify the period. James G. Hoover, 32 T.C. 618. There must also be some indication in the record that the asset had value at *157 the beginning of the loss year. See Julian M. Livingston, 46 B.T.A. 538. In Boehm v. Commissioner, 326 U.S. 287, the Supreme Court stated that "a determination of whether a loss was in fact sustained in a particular year cannot fairly be made by confining the trier of facts to an examination of the taxpayer's beliefs and actions." On the meager record before us we cannot find that petitioner incurred the losses claimed by him in 1951. We sustain respondent on this issue. Respondent determined that a part of the deficiencies for the years 1947 (Thomas Worcester individually) and 1948 through 1952 (Thomas Worcester and his wife, jointly) was due to fraud with intent to evade tax within the meaning of section 293(b). The burden rests upon respondent to prove fraud by clear and convincing evidence. Madeline V. Smith, 32 T.C. 985. Thomas Worcester was found guilty of violating the provisions of section 145(b) with respect to the income tax returns filed by him and his wife for the years 1950, 1951 and 1952. In John W. Amos, 43 T.C. 50 (on appeal, C.A. 4), this Court held that a taxpayer's prior criminal conviction for willful attempted *158 evasion of income taxes precluded him, under the doctrine of collateral estoppel, from denying in a subsequent proceeding in this Court that a part of the deficiencies for those same years was due to fraud with intent to evade tax. That case is determinative of the fraud issue here with respect to the years 1950, 1951 and 1952, and we so hold. See also Tomlinson v. Lefkowitz, 334 F. 2d 262 (C.A. 5). We also find that respondent has met his burden of showing fraud in the years 1947, 1948 and 1949. In each of those years we have the pattern of weekly checks drawn by the corporation ostensibly as reimbursements to Thomas Worcester for travel expenses. Petitioners did not even attempt at the trial or on brief to justify anything more than a small portion of these check payments as travel expenses. As indicated earlier, the first nine weekly checks given to Worcester in 1947 were in odd amounts which averaged out to exactly $100 per week, a device which we feel was designed to mislead. During these three years corporate checks were issued to corporate employees and charged to corporate expenditures and the proceeds of such checks were given to Worcester. The evidence also *159 shows frequent visits by Worcester to his safe deposit box beginning in December 1948 and continuing with great regularity throughout the year 1949 and afterwards throughout the years 1950 and 1951. In 1949 there was also the device of withdrawing large sums from the corporation by creating a sham partnership which issued invoices to the corporation for nonexistent engineering services. In Spies v. United States, 317 U.S. 492, the Supreme Court stated that wilfulness to evade tax would be inferred from "concealment of assets or covering up sources of income, handling of one's affairs to avoid making the records usual in transactions of the kind, and any conduct, the likely effect of which would be to mislead or to conceal." We find that, on this record, respondent has shown by clear and convincing evidence that a part of the deficiencies for the years 1947 through 1949 was due to fraud with intent to evade tax. Our finding that the returns for the years 1947 through 1952 were fraudulent disposes of the statute of limitations issue raised by the petitioners with respect to these years. Section 276(a). Petitioner Elisabeth B. Worcester makes an argument on brief that *160 she is not collaterally estopped from contesting the fraud issue under the rule of the Amos case, supra, for the years 1950, 1951 and 1952 on the ground that she was not a party in the prior criminal proceeding. We cannot understand what petitioner hopes to gain by this argument. Joint returns were filed for these years by Thomas and Elisabeth and section 51(b) provides, in that event, "the liability with respect to the tax shall be joint and several." In W. L. Kann, 18 T.C. 1032, affd. 210 F. 2d 247 (C.A. 3), we held that "[this] applies to the fraud penalties as well as to the deficiencies, whether or not the wife was a party to the fraud." Ginsberg Estate v. Commissioner, 271 F. 2d 511 (C.A. 5); Myrna S. Howell, 10 T.C. 859, affd. 175 F. 2d 240 (C.A. 6). Even if we were to agree with Elisabeth that she is not collaterally estopped by the prior criminal conviction of Thomas to deny fraud in the instant case, her liability on the fraud issue (being joint and several) would still be controlled by a finding of fraud against Thomas. In other words, it would be completely meaningless, where a joint return has been filed, *161 to reach contradictory results on an issue of fraud. We also sustain respondent's determination that the individual petitioners are liable for additions to tax for the years 1947 through 1952 under section 294(d)(2) for substantial underestimates of their estimated tax. The year 1947 involves only the petitioner Thomas Worcester. The corporate petitioner (Thomas Worcester, Inc.) has conceded that it is liable for additions to tax under section 293(b) for each of its fiscal years ending July 31, 1948, 1950, 1951 and 1952. The only issue contested by the corporation is the disallowance of deductions for the payments which were purportedly travel allowances to its president, Thomas Worcester. We have found earlier in this opinion that these corporate payments made by Thomas Worcester were not reimbursements of travel expenses incurred by him and that, consequently, such payments were properly included in his taxable income in the years when these payments were made. We also pointed out that the corporate petitioner claimed substantial deductions in each of these fiscal years for travel expenses incurred by its employees, thus making the application of the rule in the Cohan case inappropriate. *162 Our findings on this issue with respect to the individual petitioner is determinative of the issue here. We hold that the corporate petitioner is not entitled to deduct as travel expenses any of the contested payments to Thomas Worcester during the fiscal years here involved. The corporate petitioner alleges that it was entitled to include State Street Sales, Inc. on its consolidated returns for the fiscal years ended July 31, 1950, 1951 and 1952 which would have the effect of reducing the corporate petitioner's consolidated income for those fiscal years. We have found that no stock of State Street Sales, Inc., which was organized in February 1950, was ever issued to the corporate petitioner and that, by the end of 1950, Thomas Worcester owned all of the outstanding shares of stock in State Street Sales, Inc. But the corporate petitioner argues that even though no shares were issued to it, the corporate petitioner is nevertheless the beneficial owner of such shares under a doctrine of resulting trusts because its funds were used to pay for the stock. We reject this contention as without merit. We have found earlier that the funds withdrawn from the corporate petitioner and paid *163 to State Street Sales, Inc. as nonexistent selling expenses were taxable as constructive dividends to Thomas Worcester. Surely the fact that Worcester used some portion of these corporate withdrawals to pay for stock in State Street Sales, Inc. cannot turn the corporation-petitioner into a stockholder, beneficial or otherwise. Decisions will be entered under Rule 50. Footnotes
1. The following proceedings are consolidated herewith: THOMAS WORCESTER, ELISABETH B. WORCESTER, Docket Nos. 731-63, 732-63, 733-63, 735-63, 736-63 and THOMAS WORCESTER, Docket No. 734-63.↩
*. Net operating loss carry-back deduction allowed to the extent of net income for the fiscal year 1952.↩
2. All section references are to the Internal Revenue Code of 1939, as amended, unless otherwise noted.↩
3. The notice of deficiency states payments by Thomas Worcester, Inc. that are treated as dividends are limited in some periods by available surplus and petitioners made no argument that this was not done.↩
4. The first nine weekly checks issued by the corporation to Thomas Worcester in 1947 were in odd amounts ranging from $97 to $103, but they averaged exactly $100 a week. After that the weekly checks were issued in even amounts $100of and, after February 13, 1949, in even amounts of $150. This practice continued through the corporation's fiscal year ended July 31, 1952.↩
5. It should be pointed out here that the corporation claimed substantial deductions for travel expenses, presumably incurred by its employees during this period, which have been allowed by respondent. Therefore, we do not consider this a proper case for the application of the rule in Cohan v. Commissioner, 39 F. 2d 540↩.