Estate of Charles J. GINSBERG, Deceased, Burton Ginsberg and Harry Steinberg, Co-Executors, and Annette Ginsberg, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 17674.

United States Court of Appeals
Fifth Circuit.

Nov. 10, 1959.

Rehearing Denied Dec. 9, 1959.

Arthur B. Cunningham, Cunningham & Weinstein, Miami, Fla., for Ginsberg's Estate.

Robert Alpern, Shapero & Shapero, Detroit, Mich., for petitioner Annette Ginsberg.

Charles K. Rice, Asst. Atty. Gen., Arch M. Cantrall, Chief Counsel, Internal Revenue Service, John M. Morawski, Special Atty., Internal Revenue Service, Washington, D. C., Joseph Kovner, Lee

512

A. Jackson, Harry Baum, Dept. of Justice, Washington, D. C., for respondent.

Before RIVES, Chief Judge, and TUTTLE and BROWN, Circuit Judges.

TUTTLE, Circuit Judge.

This is a petition to review the unreported decision, based on findings of fact and conclusions of the Tax Court in two cases which were consolidated for trial in that Court. The two questions involved in this appeal are: (1) whether the Tax Court was in error in holding the estate liable for income taxes and the fraud penalties for income received by the decedent, Charles J. Ginsberg, during the years 1946, 1947 and 1948, and the widow liable for the taxes and penalty for 1948, for which a joint return was filed; and (2) whether the Tax Court properly determined that the alleged gift of $20,000 to the individual petitioner, Annette Ginsberg, by a close corporation of which her husband, the decedent, owned one-half of the stock at his death was payment for her husband's services, and, therefore, taxable income. For the reasons set forth below we hold the estate and the individual petitioners are liable for both the taxes and the fraud penalties.

The decedent and his brother, Sydney Ginsberg, operated a partnership known as "Nash Motors" in Miami, Florida, from November, 1945, until February 5, 1947. On the latter date Nash Miami Motors, Incorporated was organized under the laws of Florida and succeeded the partnership. The deceased was the president of the corporation until his death on September 22, 1948, and his brother was the secretary-treasurer during this time and thereafter became president. The corporation sold used cars to various dealers in the Miami area and particularly to the R. S. Evans Motor Company. Robert W. Muir and other purchasers testified that Nash Motors and Nash Miami Motors, Incorporated, required them, when a purchase was made, to pay one amount by check, which amount was put on the invoice, plus an additional amount in cash. Only the invoice amounts were recorded on the company's books and the book entries were the only income reported on the tax returns. The cash was never shown in the corporation's books or included in the decedent's or the corporation's income tax returns.

All cash payments were made directly to Charles or Sydney or to them jointly. The Commissioner assessed one-half of the excess payments to each brother, those received during the partnership on the basis of understatement of partnership income and those received by the stockholders during the corporation's existence as dividends received from the corporation, not reported by the individual taxpayers.

Approximately two months after the death of Charles the Board of Directors of the corporation passed the following resolution:

"Resolved that the total compensation for services rendered for the fiscal year ending November 30, 1948, be set at $35,600.00 for Sydney Ginsberg; the balance due Sydney Ginsberg is payable to him after January 31, 1949.

"Mr. Sydney Ginsberg stated that Charles Ginsberg had planned and sacrificed much of his time and energy to achieve the success of the business, and that he had always handled and taken care of the administrative part of the business. Unfortunately, he died before realizing to any substantial extent upon the products of his efforts and interests, and that while there is no obligation upon the company to express its appreciation in monetary terms, it was in his opinion just and proper that gratuity in the amount of $20,000.00 for the year 1948 and $10,000.00 for the year 1949, be made to his widow, Mrs. Annette Ginsberg, in recognition of services he performed and results he accomplished for the company. Accordingly, the following resolution was adopted:

"Be it resolved that there be paid by the Nash Miami Motors, Inc., to

Annette Ginsberg, the widow of Charles Ginsberg, as a gratuity for the fiscal year ending November 30, 1948, the sum of $20,000.00 and for the fiscal year ending November 30, 1949, the sum of $10,000.00."

Thereafter, the corporation issued a check, dated November 30, 1948, made payable to Annette in the amount of $20,000. Annette was never employed by and never performed any services for the corporation. In March and November of 1949 original and amended income tax returns for the calendar year 1948 were filed in the names of Charles and Annette Ginsberg, signed by Sydney Ginsberg as Executor and by Annette Ginsberg, which did not include the $20,000 payment as income.

■ The foregoing statement makes it abundantly clear that the Tax Court had ample basis for finding the tax deficiencies as assessed by the Court. It is clear that the corporation's books were incomplete in that they did not reflect the cash payments received for the automobiles and that the books were kept in this manner at the direction of and with the knowledge of the decedent. Moreover, Muir's testimony and the records of the Evans Company shows that the corporation required the purchasers to pay one amount by check and an additional amount by cash. The court could, of course, find this cash amount was intentionally omitted from the corporation's books and from the decedent's income tax returns. There was ample evidence that at least some of the deficiencies resulted from fraud. It is not necessary to consider the several other items of omissions, because a finding of fraud as to any part of the deficiency for any one year requires the imposition of the penalty as to the entire deficiency for that year.

■ The question of whether the corporate payment of $20,000 is a gift or something else is a question of fact to be determined in each case. John Kelley

Co. v. Commissioner, 326 U.S. 521, 66 S. Ct. 299, 90 L.Ed. 278; Lengsfield v. Commissioner, 5 Cir., 1947, 241 F.2d 508. There was adequate support for the Tax Court's determination that the payment was not a gift, but compensation. In addition to the fact that this payment was itemized as "salary for officers" in the corporation's books and the fact that Charles had received considerably less salary than Sydney during 1948, although his death occurred shortly before the end of the fiscal year, the minutes of the corporation's Board of Directors makes it obvious that the payment was for Charles' services and not a gratuity, although it was designated as a gratuity in the resolution. The recommendation made by Sydney included in the resolution authorizing the payment is contained in the minutes as follows:

"* * * Unfortunately, he died before realizing to any substantial extent upon the products of his efforts and interests, and that while there is no obligation upon the company to express its appreciation in monetary terms, it was in his (Sydney's) opinion just and proper that gratuity in the amount of $20,000 for the year 1948 * * * be made to his widow, Mrs. Annette Ginsberg, *in recognition of services he performed and results he accomplished for the company.*" (Emphasis supplied).

■ The contention by Mrs. Ginsberg that she should not have been held liable for the fraud penalty for the year 1948 because, as is certainly true, there is no evidence of fraudulent intent on her part has been answered by our case of Boyett v. Commissioner, 5 Cir., 204 F.2d 205, 209. That case[1] held that Section 51(b) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 51(b) made the liability for the tax joint and several, and that the terms of Section 293(b) require the holding that the fifty percent fraud penalty becomes assessable as a part of the

1. The opinion cited Howell v. Commissioner, 6 Cir., 175 F.2d 240, which fully discussed the basis of the court's holding.

tax. This question having already been foreclosed in this Court in the Boyett case must be decided adversely to the appellant, Annette Ginsberg.

The decision of the Tax Court is affirmed.