**NASH MIAMI MOTORS, INC., and Sydney Ginsberg, Petitioners,**

**v.**

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 22393.**

United States Court of Appeals
Fifth Circuit.

April 6, 1966.

Rehearing Denied May 9, 1966.

Daniel L. Ginsberg, Miami, Fla., for petitioners.

Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Atty., Dept. of Justice, Washington, D. C., Mitchell Rogovin, Chief Counsel, Glen E. Hardy, Atty., I. R. S., Washington, D. C., John B. Jones, Jr., Act. Asst. Atty. Gen., Meyer Rothwacks, George F. Lynch, Burton Berkley, Attys., Dept. of Justice, Washington, D. C., for appellee.

Before PHILLIPS,\* RIVES and COLEMAN, Circuit Judges.

RIVES, Circuit Judge:

This is a petition to review the third in a trilogy of cases involving the same

---

\* Of the Tenth Circuit, sitting by designation.

transactions wherein the United States charged that Charles and Sydney Ginsberg with their controlled enterprise fraudulently underreported taxable income. In Ginsberg v. United States, 257 F.2d 950 (5th Cir. 1958) this Court reversed a criminal conviction of Sydney Ginsberg. Prior to retrial a plea of *nolo contendere* was entered and that branch of the Government's effort was concluded. In Ginsberg's Estate v. Commissioner, 271 F.2d 511 (5th Cir. 1959) this Court affirmed the Tax Court's unreported decision sustaining the Commissioner's assessment of back taxes and civil fraud penalties against the estate of Charles Ginsberg and his widow. The petitioner in the present case, Sydney Ginsberg, appeals from an adverse decision of the Tax Court as to his civil liability for back taxes and civil fraud penalties for the years 1946 and 1947. Co-petitioner, Nash Miami Motors, Inc., appeals from the Tax Court's determinations for its fiscal years ending November 30, 1947 and 1948.

Sydney Ginsberg and his brother Charles, now deceased, operated a partnership known as "Nash Motors" in Miami, Florida. On February 5, 1947 they organized Nash Miami Motors, Incorporated as successor to Nash Motors. As incident to their new car sales, they received and disposed of used cars. The Government charged that in the sale of used cars Sydney Ginsberg through his controlled corporation, Nash Miami, sold used cars for a greater price than that which was reflected on the corporate books, tax return, or his individual tax return. In this Court a broad attack is made on numerous points all of which we have carefully reviewed and found to be entirely without merit. Most of the points raised had been thoroughly considered by the Tax Court. On the record now before us, we think that Court properly rejected these contentions. As to all of the nonconstitutional matters the Tax Court applied the proper law and the record amply supports its factual determinations.

In the Tax Court and again here on appeal petitioners attack the constitutionality of the Tax Court. In their brief they say:

"It is submitted that the Tax Court exercises judicial power and since the Tax Court judges do not sit during good behavior and have undiminishable compensation, the Court is in violation of Article III. In addition the Court is in the Executive branch of the government, and by exercising judicial power, the doctrine of separation of powers is violated."

The Tax Court believed that by invoking its jurisdiction petitioners waived the right to question its constitutionality. Since it is possible that the only way that the Tax Court's constitutionality can be questioned is to first invoke its jurisdiction, we are not inclined to dispose of this issue on the ground of waiver.

The Supreme Court has clearly and consistently held that functions such as those performed by the Tax Court can be entrusted by Congress to a legislative court, the judges of which are not endowed with the guarantees of Article III, § 1 of the Constitution (Ex parte Bakelite Corp., 279 U.S. 438, (1929), at 451–452, 49 S.Ct. 411, at 413, 72 L.Ed. 789):

"Legislative courts also may be created as special tribunals to *examine and determine various matters, arising between the government and others,* which from their nature do not require judicial determination and yet are susceptible of it. The mode of determining matters of this class is completely within congressional control. Congress may reserve to itself the power to decide, may delegate that power to executive officers, or may commit it to judicial tribunals.

"*Conspicuous among such matters are claims against the United States.* These may arise in many ways and may be for money, lands, or other things. They all admit of legislative or executive determination, and yet from their nature are susceptible of determination

by court; but no court can have cognizance of them except as Congress makes specific provision therefor. Nor do claimants have any right to sue on them unless Congress consents; and Congress may attach to its consent such conditions as it deems proper, *even to requiring that the suits be brought in a legislative court specially created to consider them.*" (Emphasis added.)

We have carefully considered all of the cases cited to us by counsel and can find no authority holding that Congress was powerless to extend this convenient administrative remedy to taxpayers wishing to invoke its jurisdiction. The long and useful history of such agencies as the National Labor Relations Board and the Tax Court cannot be so easily overcome. This issue was before this Court in Nash Miami Motors, Inc. v. United States, 337 F.2d 382 (5 Cir. 1964). In our opinion Willmut Gas & Oil Co. v. Fly, 322 F.2d 301 (5 Cir. 1963), cert. den., 375 U.S. 984, 84 S.Ct. 518, 11 L.Ed.2d 473, relied on in Nash Miami Motors v. United States, supra, is ample authority for rejecting petitioners' contentions. On oral argument petitioners sought to distinguish *Willmut* on the ground that the Internal Revenue Code does not presume the Commissioner to be right about his allegation of fraud. This argument misses the point since the question is solely whether Congress can entrust primary determination of the issue to an administrative body. If it can, then the ground rules as to who is presumed right are a matter to be left as Congress in its wisdom determines, and the taxpayer cannot complain that Congress has stacked the scales in his favor. Following the unsuccessful attempt to get the Tax Court declared unconstitutional in Nash Miami Motors v. United States, 337 F.2d 382 (5 Cir. 1964), mandamus was sought against Judge Fulton in the Supreme Court. The Supreme Court was asked to order Judge Fulton to call a three-judge court to consider the constitutionality of the Tax Court. The petition was promptly denied by the Supreme Court. Ginsberg, Trustee v. Fulton, U. S. District Judge, 382

U.S. 805, 86 S.Ct. 129, 15 L.Ed.2d 113 (1965).

■ In waiving sovereign immunity and creating rights in individuals against the United States, Congress may provide "only an administrative remedy," or it may grant the claimant only a judicial remedy, or it "may give to the individual the option of either an administrative or a legal remedy." Tutun v. United States, 270 U.S. 568 at 576–577, 46 S.Ct. 425, 426, 70 L.Ed. 738 (1926); Glidden Co. v. Zdanok, 370 U.S. 530 at 573, 82 S.Ct. 1459, 8 L.Ed.2d 67 (1962).

As the Supreme Court recognized in Flora v. United States, 362 U.S. 145, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960), Congress has given the taxpayer two possible remedies: In certain circumstances he may litigate in the Tax Court subject to review by the courts of appeals and by the Supreme Court; in certain other circumstances he may sue in the district court or Court of Claims subject to appellate review. The real thrust of petitioners' complaint is simply that they would have preferred to litigate their case in the district court without first having paid the taxes. This equal protection type argument was also, we believe, disposed of by the rationale of *Willmut*. Cf. Flora v. United States, 362 U.S. 145 (1960) at 175–177, 80 S.Ct. 630, 4 L.Ed.2d 623.

■ In *Willmut* the taxpayer could only raise its contention that its tax bill was too high in the Tax Court, because Congress under the statutory section there in question had vested exclusive jurisdiction in the Tax Court. The rationale of *Willmut* is that the sovereign's power over taxes is very broad and that it can require the payment of the assessed tax on a determination by the Commissioner as a precondition to judicial review. See Flora v. United States, 362 U.S. 145, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960). Surely then the sovereign can permit delay of payment pending an administrative review of the Commissioner's determination. In this case petitioners have had a full administrative review and every reasonable opportunity to build a record to support their position. This Court

has fully reviewed that record and the arguments presented by petitioners. Thus they have been before both an administrative body and an Article III court. The case having reached this posture, we can see no constitutional objection to the sovereign now collecting the taxes and civil penalties found to be due and owing. The decision is therefore

Affirmed.

## ON PETITION FOR REHEARING

PER CURIAM:

We do not agree with the petitioners that Ex parte Bakelite Corp., 1929, 279 U.S. 438, 49 S.Ct. 411, 73 L.Ed. 789, was overruled on the point here pertinent in Glidden Company v. Zdanok, 1962, 370 U.S. 530, 549, 550, 573, 82 S.Ct. 1459, 8 L.Ed.2d 671. The petition for rehearing is

Denied.