Philip STEIN, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 22770.

United States Court of Appeals
Fifth Circuit.

July 6, 1966.

Rehearing Denied Aug. 2, 1966.

Henry Klepak, Roy J. True, Dallas, Tex., for appellant.

Stanley McMurry, Asst. U. S. Atty., Melvin M. Diggs, U. S. Atty., B. H. Tim-

mins, Jr., Asst. U. S. Atty., Dallas, Tex., for appellee.

Before TUTTLE, Chief Judge, RIVES, Circuit Judge, and CHOATE, Senior District Judge.

CHOATE, Senior District Judge:

Appellant was convicted in the district court for making and submitting false documents to the Tax Court in violation of 18 U.S.C. § 1001, which provides:

"Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representation, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years or both. June 25, 1948, c. 645, 62 Stat. 749."

At the same time the jury acquitted appellant of perjury. Both charges grew out of proceedings in the Tax Court, wherein appellant had sought review of the disallowance by the Commissioner of Internal Revenue of certain gambling losses during the years 1952–54. In the Tax Court appellant testified that his practice was at the end of each gambling day to note his winnings or losses on match book covers, cocktail napkins, cards, etc., and later to transfer the data to his notebook, which he used to make out his tax return. Appellant introduced into evidence in the Tax Court Exhibit 12, a shoebox containing match book covers, etc., with notations of amounts won and lost on specific dates in 1952.

Appellant's testimony as to how he noted and recorded his gambling winnings and losses, as a "contemporaneous record," was the basis for Count One charging him with perjury (18 U.S.C. § 1621); the introduction of Exhibit 12 into evidence was the basis for Count Two charging him with making and submitting false documents to the Tax Court (18 U.S.C. § 1001).

At trial below appellant admitted that the notations on the items comprising Exhibit 12 were not in existence in 1952. He contends that he used them in the Tax Court, not as originals contemporaneously made, but as "examples" of how he kept records. Thus, he argues, he can be convicted under the wording of the second count without having committed a crime.[1] Appellant's contentions on appeal, in the order in which they will be discussed, center on: the sufficiency of the indictment; the alleged inconsistency of the verdict of not guilty on Count One and guilty on Count Two; the sufficiency of the evidence as to the false document offense.

1. Count Two of the indictment was not fatally defective. It is sufficient in setting forth the elements of the offense (Mathes, "Jury Instructions &

---

1. Count Two states:

"On or about the 16th day of November 1960, at Dallas, Texas, within the Dallas Division of the Northern District of Texas, one Philip Stein, late of Dallas, Texas, did then and there knowingly and wilfully make and submit false documents to the Tax Court of the United States, an agency of the United States, in a matter within its jurisdiction, while it was conducting a hearing at Dallas, Texas into his and his wife's income tax liabilities for the years 1952, 1953 and 1954, by introducing into evidence Petitioner's Exhibit Number 12, which was a shoebox of match book covers, cocktail napkins, post cards and other pieces of paper which had recorded thereon dates in 1952 and amounts of gambling wins and losses, whereas as he then and there well knew that the notations on said match book covers in this box with the dates of Jan. 17–52, Feb. 5–52, April 28–52, May 3–52, May 7–52, May 10–52, May 15–52, May 21–52, May 29–52, Sept. 25–52, Sept. 26–52, Sept. 29–52, Oct. 1– 52, Oct. 6–52, Nov. 11–52, Nov. 15–52, and Dec. 20–52 were not made on the dates shown, and that said false and fictitious documents were material and relevant to the hearing being conducted by the Tax Court of the United States into his and his wife's income tax liabilities for the years 1952, 1953 and 1954."

Forms for Federal Criminal Cases," 27 F.R.D. 39, 136) and in apprising the person charged of what he must be prepared to meet. See United States v. Debrow, 346 U.S. 374, 74 S.Ct. 113, 98 L.Ed. 92 (1953). The essential element of falseness is charged by the allegation that the notations on the match book covers "were not made on the dates shown." This was enough to apprise appellant that he was charged with holding out these notations as having been made on the dates shown on the items when in fact they were not made then.

■■ 2. The verdict of acquittal on the perjury count is no basis for setting aside the conviction on the false documents count. The verdict is not necessarily inconsistent, since different crimes, with different elements and burdens of proof were charged. In addition, on the perjury charge the Government must prove the falsity of the testimony by at least two witnesses or by one witness and corroborating evidence, whereas this burden is not on the Government in connection with the false documents charge. See Neely v. United States, 300 F.2d 67, 93 A.L.R.2d 718 (9th Cir.), cert. denied, 369 U.S. 864, 82 S.Ct. 1030, 8 L. Ed.2d 84 (1962). More important, actual or apparent inconsistency in a jury verdict in a criminal case is no basis for setting it aside. In Dunn v. United States, 284 U.S. 390, 52 S.Ct. 189, 76 L. Ed. 356 (1932), defendant was convicted of maintaining a nuisance by keeping liquor for sale, but was acquitted of possessing and selling liquor at the same time and place. The conviction was sustained. See also Steckler v. United States, 7 F.2d 59 (2d Cir. 1925) and 8 Moore, Federal Practice ¶ 31.05 (2d ed. 1965).

■ 3. The evidence was sufficient to sustain the guilty verdict as to the false documents offense. Appellant had testified in the Tax Court that he "found" the items while "going through the garage, cleaning it up the other day"; that he had thrown out the slips for other years. When asked, "Was it from these [items of Exhibit 12] you then made

your entry into the books [for 1952]?," appellant replied, "I did." The jury could properly conclude that the documents had been introduced into evidence upon the false representation that appellant made the notes thereon on the dates shown on the items—that appellant was guilty as one who "knowingly and willfully falsifies, conceals or covers up * * * a material fact, * * * or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry" as prohibited by the statute.

■ An additional issue, raised by the court sua sponte and briefed by both parties at the court's request, is whether the Tax Court is a department or agency of the United States within the contemplation of 18 U.S.C. § 1001. The question has not been judicially determined; however, the definitions provided in 18 U.S. C. § 6, considered in conjunction with the status and nature of the Tax Court, require an affirmative answer.

As used in Title 18, "department and agency" are defined by section 6.

"The term 'department' means one of the executive departments enumerated in section 1 of Title 5, unless the context shows that such term was intended to describe the executive, legislative, or judicial branches of the government.

"The term 'agency' includes any department, independent establishment, commission, administration, authority, board or bureau of the United States or any corporation in which the United States has a proprietary interest, unless the context shows that such term was intended to be used in a more limited sense."

The Board of Tax Appeals, predecessor of the Tax Court, was created by Congress in 1924 (Revenue Act of 1924, ch. 234, § 900, 43 Stat. 253, 336, as amended by Revenue Act of 1926, ch. 27, § 1000, 44 Stat. 105) to give taxpayers, prior to payment of the taxes, an opportunity for independent review of the Commissioner's determination that additional taxes are due. Old Colony Trust Co. v.

Commissioner of Internal Revenue, 279 U.S. 716, 721, 49 S.Ct. 499, 73 L.Ed. 918 (1929); Flora v. United States, 362 U.S. 145, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960) (on rehearing). The Board was not a court. It was an executive or administrative board, upon the decision of which the parties could seek review by the courts, similar to the judicial review of orders of the Federal Trade Commission.[2] Old Colony Trust Co. v. Commissioner of Internal Revenue, 279 U.S. 716, 723, 725, 49 S.Ct. 499, 73 L.Ed. 918 (1929). Accord, Helvering v. Rankin, 295 U.S. 123, 131, 55 S.Ct. 732, 79 L.Ed. 1343 (1935); Commissioner of Internal Revenue v. Liberty Bank & Trust Co., 59 F.2d 320, 323 (6th Cir. 1932); Tracy v. Commissioner of Internal Revenue, 53 F.2d 575, 578 (6th Cir. 1931), cert. denied, 287 U.S. 632, 53 S.Ct. 83, 77 L.Ed. 548 (1932) ("The mere fact that the Board may exercise judicial, or quasi judicial powers * * * does not militate against this position. In organization and function the Board is administrative."); Garden City Feeder Co. v. Commissioner of Internal Revenue, 75 F.2d 804, 806 (8th Cir. 1935).

The nature of the Board of Tax Appeals as an independent agency in the executive branch of the government was continued by the Internal Revenue Code of 1939, § 1100. "Its name was changed to the Tax Court of the United States by the Act of Oct. 21, 1942, 56 Stat. 957, but its relation to the constitutional courts was not altered." Hutchings-Sealy Nat'l Bank of Galveston v. Commissioner of Internal Revenue, 141 F.2d 422, 424 (5th Cir. 1944).

Presently, Section 7441 of the Internal Revenue Code of 1954 provides

"The Board of Tax Appeals shall be continued as an independent agency in the Executive Branch of the Government, and shall be known as the Tax Court of the United States. The members thereof shall be known as the chief judge and the judges of the Tax Court."

By statute and case law the characterization of the Tax Court as an "agency" or "administrative body" has been maintained. See Martin v. Commissioner, 358 F.2d 63 (7th Cir. 1966) and Nash Miami Motors, Inc. v. Commissioner of Internal Revenue, 358 F.2d 636 (5th Cir. 1966) (where the constitutionality of the Tax Court was attacked and upheld).[3] Compare Stern v. Commissioner of Internal Revenue, 215 F.2d 701 (3d Cir. 1954) and Quinn v. Hook, 231 F.Supp. 718 (E.D. Pa. 1964), aff'd 341 F.2d 920 (3d Cir. 1965) (emphasizing the judicial functions of the Tax Court). The Tax Court is a creature of Congressional enactment whose powers are granted by Congress. It is an agency of the United States by designation and in fact, and therefore it is an agency within the contemplation of 18 U.S.C. § 1001.

We cannot accept appellant's suggestion that section 1001 was designed to apply only to falsifications made *by* a governmental employee. The force and effect of the statute is to prevent frauds *upon* the Government. Spivey v. United States, 109 F.2d 181, 184 (5th Cir. 1940).

Since no reversible error has been shown on the grounds urged by appellant and since the Tax Court is a "department or agency of the United States" within the purview of 18 U.S.C. § 1001, the judgment of the conviction in the district court is affirmed.

2. The Tax Court has also been compared to "such agencies as the National Labor Relations Board." Nash Miami Motors, Inc. v. Commissioner, of Internal Revenue, 358 F.2d 636, 638 (5th Cir. 1966).

3. On petition for rehearing, the court in Nash Miami Motors, Inc. v. Commissioner of Internal Revenue, 358 F.2d at 639, rejected the contention that Glidden Co. v. Zdanok, 370 U.S. 530, 82 S.Ct. 1459, 8 L.Ed.2d 671 (1962), overruled Ex parte Bakelite Corp., 279 U.S. 438, 49 S.Ct. 411, 73 S.Ct. 789 (1929), on the point for which *Bakelite* was cited in the *Nash* opinion—that functions such as those performed by the Tax Court can constitutionally be entrusted by Congress to a legislative court or executive officers.

ON PETITION FOR REHEARING

PER CURIAM:

This cause was considered upon appellant's motion for rehearing. It presents no issues which were not considered previously by the court, and covered in points one and three of the opinion.

Under clear instructions from the trial court, the jury could have acquitted appellant had it believed his defense—that the exhibits he introduced into evidence in the Tax Court were intended as mere "examples." The propriety of the instructions has not been questioned in this cause. The verdict of guilty has not been shown to be derived through any misconception of the language of the indictment.

The motion for rehearing is therefore denied.