EDWARD CASEL AND JANICE G. CASEL, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 11025–79.     Filed September 1, 1982.

Edward Casel, pro se.
*Robert L. Lynch*, for the respondent.

WILES, *Judge*: Respondent determined deficiencies in petitioners' 1974 and 1975 Federal income taxes of $4,202.37 and

---

$10,390.96, respectively. The issues for decision are: (1) Whether petitioner Edward Casel's distributive share of his partnership loss for 1974 and 1975 should be reduced pursuant to section 267[1] to the extent of the unpaid management fees owed by the partnership to a related corporation that were accrued and deducted by the partnership in computing its losses for those years; (2) whether petitioners are entitled to a claimed deduction for 1975 for payment of back real estate taxes and interest accrued thereon with respect to property that they purchased at a sheriff's sale subject to unpaid real estate taxes.

### FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly.

Edward Casel (hereinafter petitioner) and Janice G. Casel, husband and wife, resided in Moorestown, N.J., at the time they filed their petition in this case. They filed joint Federal income tax returns for 1974 and 1975 with the Internal Revenue Service Center, Holtsville, N.Y.

### *Issue 1. Section 267*

At all times relevant hereto, petitioner was a 50-percent partner in a partnership known as Edward Casel and Arthur Karpf, et al. (hereinafter referred as to the partnership). The ownership of the remaining 50 percent of the partnership was divided equally among Arthur Karpf, Henry Karpf, and Robert Karpf, none of whom was related to petitioner.

On August 1, 1973, the partnership purchased the Chelsea Towers Apartments, a rental apartment complex, from the U.S. Department of Housing and Urban Development (hereinafter HUD), in exchange for a purchase-money mortgage (hereinafter referred to as the HUD mortgage agreement) in the amount of $2,340,000. The HUD mortgage agreement provided, inter alia, the following:

(d) The books and accounts of the operations of the mortgaged property

---

[1] All statutory references are to the Internal Revenue Code of 1954 as amended and in effect for the years in issue.

and of the project shall be kept in accordance with the requirements of the Secretary [of HUD].

(e) Within sixty (60) days following the end of each fiscal year the Secretary [of HUD] shall be furnished with a complete annual financial report based upon an examination of the books and records of mortgagor prepared in accordance with the requirements of the Secretary [of HUD]
\* \* \*

Among the items which had to be included in the partnership's annual financial report to HUD were a balance sheet showing all prepaid and deferred items, a profit and loss statement, an earned surplus statement, a statement of capital or other surplus, and a statement of receipts and disposition of funds. HUD further required the financial report to be prepared on an accrual basis, which was also the method the partnership employed to compute its taxable income during the years in issue.

The Chelsea Towers Apartments (hereinafter referred to as Chelsea Towers) was managed by Casel Agency, Inc., a New Jersey corporation which was wholly owned by petitioners and their two children. At all relevant times herein, Casel Agency, Inc., was on the cash receipts and disbursements method of accounting.

During 1974 and 1975, the partnership encountered serious financial problems which made it unable to make its mortgage payments to HUD. Notwithstanding such financial difficulty, petitioner knew that the partnership could pay management fees of $17,830 and $17,298 owed to Casel Agency, Inc., for 1974 and 1975, respectively, but he was not certain about the legality of the partnership's making payments to his family's corporation while not making payments on the HUD mortgage. Consequently, the partnership retained Leslie Carson (hereinafter Carson), an attorney and a former Acting General Counsel of HUD, to advise it on the legality of the matter.[2] Carson advised the partnership not to make any payments to Casel Agency, Inc., while the partnership was delinquent on its mortgage payments because HUD might construe such action as a conversion of funds which should have been paid to

---

[2]At the time the partnership retained Leslie Carson, he was not employed by HUD or any other Government agency.

the Government and refer the matter to the U.S. Department of Justice for possible criminal action.

The partnership followed Carson's advice and did not pay any management fees to Casel Agency, Inc., in 1974 or 1975.[3] In addition, the partnership did not pay such fees within 2½ months of the close of each respective year. Nevertheless, on the partnership's 1974 and 1975 income tax returns (Forms 1065), the partnership accrued and deducted the management fees owed to Casel Agency, Inc., in the amounts of $17,830 and $17,298, respectively.

On his 1974 and 1975 joint Federal income tax returns, petitioner claimed deductions of $8,915 and $8,649, respectively, as his distributive share of partnership losses attributable to the unpaid accrued management fees owed to Casel Agency, Inc. In the notice of deficiency, however, respondent disallowed those claimed deductions.

## Issue 2. Deductibility of Real Estate Taxes and Interest

On March 5, 1975, First Peoples National Bank of New Jersey (hereinafter FPNB) obtained a foreclosure judgment in the Superior Court of New Jersey on a mortgage it held on office property (hereinafter the property) which was located in Willingboro, N.J., and owned by C. W. March Realty Co., Inc. On March 10, 1975, FPNB obtained a writ of execution from the Superior Court of New Jersey directing the sheriff of Burlington County, N.J., to sell the property.

The property was scheduled to be sold at the sheriff's sale on May 15, 1975. Prior to the sheriff's sale, petitioners entered into an agreement with FPNB which provided that if no competitive bids were made at such sale, FPNB would purchase the property for $100 and then assign the property to petitioners for $372,344.17, which was the amount that FPNB was prepared to bid at the sale.

The sheriff's sale was held on May 15, 1975. One of the conditions of such sale was that the property would be sold subject to all real estate taxes and interest accrued thereon,

---

[3] Since Casel Agency, Inc., was a cash basis taxpayer, it did not include the unpaid management fees in income for 1974 or 1975.

and sheriff's fees. FPNB was the only bidder at the sale, and it purchased the property for $100.

On May 30, 1975, petitioner paid $18,013.37 to the tax collector of Willingboro, N.J., for outstanding real estate taxes and interest that had encumbered the property for the following tax quarters:

| 1974 | | 1975 | |
|---|---|---|---|
| 2d Quarter tax | $3,701.74 | 1st Quarter tax | $3,435.77 |
| Interest | 443,40 | Interest | 129.24 |
| 3d Quarter tax | 3,169.80 | 2d Quarter tax | 3,435.77 |
| Interest | 288.35 | Interest | 36.17 |
| 4th Quarter tax | 3,169.80 | | |
| Interest | 203.25 | | |

Of the $18,013.37 paid by petitioner for real estate taxes and interest with respect to the property, $16,857.21 was attributable to the tax items encumbering the property during the time it was owned by the mortgagor, C.W. March Realty Co., Inc., or the trustee during the period that such corporation was in a bankruptcy proceeding.

On June 3, 1975, FPNB assigned all of its right, title, and interest in the property to petitioners. On July 17, 1975, the sheriff of Burlington County, N.J., conveyed the property to petitioners by sheriff's deed.

On petitioner's 1975 joint Federal income tax return, he claimed a deduction for real estate taxes and interest which included the $16,857.21 that was attributable to the tax items encumbering the property during the time it was owned by the mortgagor, C.W. March Realty Co., Inc., or the trustee during the period that such corporation was in a bankruptcy proceeding. In the notice of deficiency, respondent disallowed petitioner's claimed deduction for real estate taxes and interest to the extent of $16,857.21.

OPINION

*Issue 1. Section 267*

We must determine whether respondent properly applied section 267 to disallow that portion of petitioner's distributive share of the partnership's losses for 1974 and 1975 which

reflects the accrued but unpaid management fees owed by the partnership to petitioner's wholly owned family corporation, Casel Agency, Inc.

Section 267 provides, in pertinent part, the following:

SEC. 267(a). DEDUCTIONS DISALLOWED.—No deduction shall be allowed—

\*     \*     \*     \*     \*     \*     \*

(2) UNPAID EXPENSES AND INTEREST.—In respect of expenses, otherwise deductible under section 162 or 212, or of interest, otherwise deductible under section 163, —

(A) If within the period consisting of the taxable year of the taxpayer and 2½ months after the close thereof (i) such expenses or interest are not paid, and (ii) the amount thereof is not includible in the gross income of the person to whom the payment is to be made; and

(B) If, by reason of the method of accounting of the person to whom the payment is to be made, the amount thereof is not, unless paid, includible in the gross income of such person for the taxable year in which or with which the taxable year of the taxpayer ends; and

(C) If, at the close of the taxable year of the taxpayer or at any time within 2½ months thereafter, both the taxpayer and the person to whom the payment is to be made are persons specified within any one of the paragraphs of subsection (b).

(b) RELATIONSHIPS.—The persons referred to in subsection (a) are:

\*     \*     \*     \*     \*     \*     \*

(2) An individual and a corporation more than 50 percent in value of the outstanding stock of which is owned, directly or indirectly, by or for such individual;

\*     \*     \*     \*     \*     \*     \*

(c) CONSTRUCTIVE OWNERSHIP OF STOCK.—For purposes of determining, in applying subsection (b), the ownership of stock—

\*     \*     \*     \*     \*     \*     \*

(2) An individual shall be considered as owning the stock owned, directly or indirectly, by or for his family;

\*     \*     \*     \*     \*     \*     \*

(4) The family of an individual shall include only his brothers and sisters (whether by the whole or half blood), spouse, ancestors, and lineal descendants; and

Section 1.267(b)–1(b)(1), Income Tax Regs., which deals specifically with transactions involving a partnership (i.e., Edward Casel and Arthur Karpf, et al.) and a person other than a partner (i.e., Casel Agency, Inc.) provides:

Sec. 1.267(b)–1(b). *Partnerships.* (1) Since section 267 does not include members of a partnership and the partnership as related persons, transactions between partners and partnerships do not come within the scope of section 267. Such transactions are governed by section 707 for the purposes

of which the partnership is considered to be an entity separate from the partners. See section 707 and sec. 1.707–1. *Any transaction described in section 267(a) between a partnership and a person other than a partner shall be considered as occurring between the other person and the members of the partnership separately. Therefore, if the other person and a partner are within any one of the relationships specified in section 267(b), no deductions with respect to such transactions between the other person and the partnership shall be allowed —*

(i) *To the related partner to the extent of his distributive share of partnership deductions for losses or unpaid expenses or interest resulting from such transactions, and*

(ii) To the other person to the extent the related partner acquires an interest in any property sold to or exchanged with the partnership by such other person at a loss, or to the extent of the related partner's distributive share of the unpaid expenses or interest payable to the partnership by the other person as a result of such transaction.

[Emphasis added.]

See also sec. 1.267(b)–1(b)(2), example (*1*), Income Tax Regs.

Petitioner does not dispute the applicability of section 1.267(b)–1(b)(1) and (2), Income Tax Regs. (hereinafter sometimes referred to as the regulation), to the facts of the instant case; instead, he maintains that the regulation is invalid. Petitioner contends that the regulation is invalid because it treats the partnership as an aggregate of individuals for purposes of section 267, rather than a separate entity. According to petitioner, the 1954 Code relies heavily, although not completely, on the entity theory of partnerships, and the inclusion of the term "partnership" within the definition of the term "person" in section 7701(a) seems to negate the concept of a partnership as a collection of individuals. Respondent, on the other hand, maintains that section 1.267(b)–1(b)(1) and (2), Income Tax Regs., is a valid regulation and, therefore, petitioner's 1974 and 1975 distributive share of his losses from the partnership must be reduced to the extent that such share includes the partnership's accrual of unpaid management fees[4] to Casel Agency, Inc., a corporation related to petitioner within the meaning of section 267(b)(2). See also sec. 267(c)(2) and (4). For the reasons set forth below, we hold for respondent.

Since the issue before us turns upon whether an aggregate

---

[4]These fees were not paid by the partnership during 1974 or 1975, nor were they paid within 2½ months of the close of each respective year.

or entity theory of partnerships was intended to be embodied in section 267(b)(2), we resort to existing case law and legislative history for guidance.

Section 24(b)(1)(B), 1939 Code,[5] the predecessor provision to section 267(b)(2), was analyzed in *Commissioner v. Whitney*, 169 F.2d 562 (2d Cir. 1948), revg. 8 T.C. 1019 (1947), cert. denied 335 U.S. 892 (1948). In *Whitney*, a corporation purchased, for fair consideration, the assets of a partnership whose partners were the majority shareholders of the corporation. Some of the assets transferred gave rise to capital losses, and the partners sought to deduct their respective shares of such losses on their individual income tax returns. The Commissioner disallowed these losses on the ground that each of the partners owned directly or indirectly more than 50 percent of the purchasing corporation's stock.[6] The U.S. Court of Appeals for the Second Circuit upheld the Commissioner's determination, concluding that an aggregate theory of partnerships should prevail in applying section 24(b)(1)(B). This

---

[5]Using essentially identical language to sec. 267(b)(2), sec. 24(b)(1)(B), 1939 Code, provides, in pertinent part, the following:

SEC. 24. ITEMS NOT DEDUCTIBLE.

(b) LOSSES FROM SALES OR EXCHANGES OF PROPERTY.—

(1) LOSSES DISALLOWED.—In computing net income no deduction shall in any case be allowed in respect of losses from sales or exchanges of property, directly or indirectly—

* * * * * * *

(B) Except in the case of distributions in liquidation, between an individual and a corporation more than 50 per centum in value of the outstanding stock of which is owned, directly or indirectly, by or for such individual;

We further note that sec. 24(c), 1939 Code, provides, in language very similar to that appearing in sec. 267(a)(2), as follows:

SEC. 24(c). UNPAID EXPENSES AND INTEREST.—In computing net income no deduction shall be allowed under section 23(a) [predecessor provision of sec. 162], relating to expenses incurred, or under section 23(b) [predecessor provision of sec. 163], relating to interest accrued—

(1) If such expenses or interest are not paid within the taxable year or within two and one-half months after the close thereof; and

(2) If, by reason of the method of accounting of the person to whom the payment is to be made, the amount thereof is not, unless paid, includible in the gross income of such person for the taxable year in which or with which the taxable year of the taxpayer ends; and

(3) If, at the close of the taxable year of the taxpayer or at any time within two and one-half months thereafter, both the taxpayer and the person to whom the payment is to be made are persons between whom losses would be disallowed under section 24(b).

[6]Sec. 24(b)(2)(C), 1939 Code, attributed to an individual who owned any stock in a corporation, any stock owned by his partner. This attribution rule is now incorporated in sec. 267(c)(3).

Court has since followed *Whitney* in applying section 24(b)(1)(B) of the 1939 Code, noting that, although for some purposes of Federal tax law a partnership is regarded as an entity distinct from its members, the aggregate theory has been applied particularly in determining the tax consequences of transactions between a partnership and a corporation controlled by the partners, where it is sought to interpose the partnership between the individual partners and the corporation. *Busche v. Commissioner*, 23 T.C. 709 (1955), affd. 229 F.2d 437 (5th Cir. 1956).[7]

When the 1954 Code was adopted, section 707(a) specifically treated a partnership as a separate entity with which its partners could transact business. As to those situations not involving a transaction between a partner and his partnership, however, the conference report at the time of the enactment of the 1954 Code specifically states:

> Both the House provisions and the Senate amendment provide for the use of the "entity" approach in the treatment of the transactions between a partner and a partnership which are described above. *No inference is intended, however, that a partnership is to be considered as a separate entity for the purpose of applying other provisions of the internal revenue laws if the concept of the partnership as a collection of individuals is more appropriate for such provisions.* An illustration of such a provision is section 543(a)(6), which treats income from the rental of property to shareholders as personal holding company income under certain conditions. [H. Rept. 2543, 83d Cong., 2d Sess. 59 (1954). Emphasis added.]

See also *Pratt v. Commissioner*, 64 T.C. 203, 209 (1975), affd. in part, revd. and remanded in part 550 F.2d 1023 (5th Cir. 1977).

In *Liflans Corp. v. United States*, 182 Ct. Cl. 825, 390 F.2d 965, 975–976 (1968), the U.S. Court of Claims followed the Second Circuit's rationale in *Commissioner v. Whitney, supra*, finding the concept of a partnership as an aggregate of individuals as more appropriate for section 267. In *Liflans*, the Court of Claims applied section 267(a)(2) to disallow an unpaid interest deduction claimed by a corporation and accrued to a partnership, treating a partner as an individual within the meaning of section 267(b)(2).

Notwithstanding the aforementioned case law and legisla-

---

[7]See also *Nash Miami Motors, Inc. v. Commissioner*, T.C. Memo. 1964–230, affd. without discussion of this issue 358 F.2d 636 (5th Cir. 1966), cert. denied 385 U.S. 918 (1966).

tive history, petitioners argue that an entity theory of partnerships should be applied in construing section 267 because in *Moradian v. Commissioner*, 53 T.C. 207, 212 (1969), we held that, for purposes of section 48(c), a partnership is to be treated as an entity. We do not believe that our holding in *Moradian* compels us to apply an entity theory of partnerships to section 267. We stated in *Moradian* that our holding with respect to section 48(c) was based on factors peculiar to that section. Furthermore, we expressly noted in *Moradian* that section 267 had entirely different purposes which had called for the application of an aggregate theory of partnerships to such section. *Moradian v. Commissioner, supra* at 212 n. 3.

When the 1954 Code was adopted by Congress, the conference report, discussed and excerpted in part above, clearly stated that whether an aggregate or entity theory of partnerships should be applied to a particular Code section depends upon which theory is more appropriate to such section. Section 267(a)(2) serves to foreclose a loophole to the tax laws that would otherwise permit a deduction for a payment never made to a related party that may never seek enforcement of its contractual rights. If we were to apply an entity theory of partnerships to such section, then that loophole would continue to exist whenever an individual partner interposed his partnership between himself and his related corporation in transactions encompassed by section 267(a). Under the 1939 Code, the courts rejected such an approach and applied an aggregate theory of partnerships to section 24(b) and (c), the predecessor of section 267. Section 267, insofar as pertinent to the issue before us, embodies essentially the same language and policies as section 24(b) and (c) of the 1939 Code. When the Secretary issued section 1.267(b)–1(b)(1) and (2), Income Tax Regs., he simply followed the longstanding position taken by the courts with respect to section 24(b)(1)(B), 1939 Code, a position followed by the Court of Claims in *Liflans Corp. v. United States, supra*, which arose under the 1954 Code. Since section 267 embodies essentially the same language and policies as section 24(b) and (c) of the 1939 Code, and since the conference report to the 1954 Code recognizes, when appropriate, the concept of a partnership as a collection of individuals (i.e., the aggregate theory), we are unable to say that section

1.267(b)–1(b)(1) and (2), Income Tax Regs., is inconsistent with, or an unreasonable interpretation of, section 267. Consequently, we hold that it is a valid regulation. See *Commissioner v. South Texas Lumber Co.*, 333 U.S. 496 (1948).

Petitioner also argues that section 267 should not be applied in any event because the HUD mortgage agreement required the partnership to use an accrual method of accounting, and the petitioner would have been in violation of Federal law if his wholly owned corporation, Casel Agency, Inc., had been paid the management fees by the partnership while the latter was delinquent on its HUD mortgage payments.[8] Petitioner contends that he should not have to choose between complying with the Commissioner's interpretation of section 267, which petitioner views as requiring payment within 2½ months, or complying with Federal statutes utilized by HUD which prohibit such a payment. We disagree and think that petitioner's argument misses the mark for the following two reasons.

First, there is no evidence in the record that HUD required the partnership to be an accrual basis taxpayer, but only that the partnership use an accrual method of accounting in its financial reporting. We have held in *World Airways, Inc. v. Commissioner*, 62 T.C. 786, 800 (1974), affd. 564 F.2d 886 (9th Cir. 1977), that the accrual accounting requirements of one Federal agency do not mandate that petitioner use the same accounting methods for Federal tax purposes. See also *Old Colony R. Co. v. Commissioner*, 284 U.S. 552, 562 (1932). Second, the effect of section 267 is not to require the partnership to make a payment to Casel Agency, Inc., that might cause petitioner to be personally liable under Federal civil or criminal statutes. Instead, section 267 causes petitioner's income to be more accurately reflected by disallowing to him his distributive share of the partnership's losses to the extent that such share includes the unpaid management fees.

Finally, petitioner argues that in the event we find that section 267 operates to reduce his distributive share of the partnership's losses, then we should take into account his testimony that an agreement existed between Casel Agency,

---

[8]Petitioner has not cited any specific provisions of Federal law which would apply if the partnership had paid the management fees to Casel Agency, Inc., while the partnership was delinquent on its HUD mortgage payments.

Inc., and Henry Karpf which provided that 40 percent of the management fees were to be paid to Henry Karpf, using Casel Agency, Inc., as a conduit. We need not consider the effect that such an agreement would have on respondent's determination because we are not convinced that Casel Agency, Inc., and Henry Karpf had any agreement with respect to splitting the management fees during the years in issue. Petitioner failed to introduce sufficient credible evidence that such an agreement between Casel Agency, Inc., and Henry Karpf existed during the years in issue, nor did he offer any explanation as to his failure to call Henry Karpf as a witness to corroborate petitioner's testimony. Moreover, we do not accept as fact petitioner's self-serving and conclusory testimony that such an agreement existed during the years in issue. See *South Texas Rice Warehouse Co. v. Commissioner*, 366 F.2d 890, 898 (5th Cir. 1966), affg. 43 T.C. 540 (1965), cert. denied 386 U.S. 1016 (1967).

## Issue 2. Deductibility of Real Estate Taxes and Interest

We must determine whether petitioners may claim a deduction for payment of back real estate taxes, and interest accrued thereon, on property that they purchased at a sheriff's sale, which was subject to unpaid real estate taxes.

Section 164(a)(1) allows a deduction for local real property taxes, except as otherwise provided in such section. Section 164(c)(2) disallows the deduction for "taxes on real property, to the extent that subsection (d) requires such taxes to be treated as imposed on another taxpayer." Section 164(d) provides, in pertinent part, the following:

SEC. 164(d). APPORTIONMENT OF TAXES ON REAL PROPERTY BETWEEN SELLER and PURCHASER.—

(1) GENERAL RULE.—For purposes of subsection (a), if real property is sold during any real property tax year, then—

(A) so much of the real property tax as is properly allocable to that part of such year which ends on the day before the date of the sale shall be treated as a tax imposed on the seller, and

(B) so much of such tax as is properly allocable to that part of such year which begins on the date of the sale shall be treated as a tax imposed on the purchaser.

Section 1.164–6(b)(1)(i), Income Tax Regs., states that the rule

of section 164(d) "shall apply whether or not the seller and the purchaser apportion such tax."

Petitioners, as assignees of a foreclosing mortgagee, FPNB, purchased property sold at a sheriff's sale subject to unpaid real estate taxes and interest accrued thereon, and petitioners paid such taxes and interest. While the petitioners do not dispute that such a sale occurred, they contend that they should be able to deduct back taxes and the interest accrued thereon because the sheriff, the seller of the property, cannot claim those deductions as he was not the owner of the property. Respondent, on the other hand, maintains that although sections 163 and 164 allow deductions for interest and real property taxes, respectively, a taxpayer must capitalize as part of his purchase price for property any back taxes and interest which he pays that accrued prior to his ownership interest. For the reasons set forth below, we hold for respondent.

We do not think it is a relevant consideration that the sheriff is unable to claim a deduction for the real estate taxes which were due on the property prior to the sale. Sections 164(c)(2) and 164(d)(1)(B) clearly mandate that petitioners may only claim a current deduction for "so much of the tax as is properly allocable to that part of such year which begins on the date of the sale." On May 15, 1975, the property was sold at the sheriff's sale to FPNB. On May 30, 1975, petitioner paid the local property tax collector $18,013.37 to cover the taxes that were owed on the property, from the period beginning with the second quarter of 1974 through the second quarter of 1975.[9] On June 3, 1975, FPNB assigned to petitioners all of its right, title, and interest in the property by virtue of its bid at the sheriff's sale.

As assignees of FPNB, the foreclosing mortgagee, petitioners' rights to deductions under sections 163 and 164 certainly cannot be greater than the rights that FPNB would have had if there had been no assignment. It is well settled that a mortgagee who forecloses on property cannot deduct real

---

[9]Petitioners commenced ownership of the property during the second quarter of 1975. Of the $18,013.37 which petitioner paid to the local property tax collector, respondent disallowed $16,857.21, the amount allocable to the tax items encumbering the property during the time that it was owned by the mortgagor, C. W. March Realty Co., Inc.

estate taxes which have accrued thereon prior to the date of purchase; payments for such taxes are considered capital expenditures to be added to the cost of the property.[10] *Estate of Schieffelin v. Commissioner*, 44 B.T.A. 137, 140 (1941). See also *Hyde v. Commissioner*, 64 T.C. 300, 306 (1975). Consequently, respondent properly disallowed petitioners' claimed deductions for real estate taxes and interest which accrued on the property prior to its acquisition by petitioners.

To reflect the foregoing,

*Decision will be entered for the respondent.*

---

[10]We note that this rule is generally applicable to all purchasers and not merely to foreclosing mortgagees. *Lifson v. Commissioner*, 98 F.2d 508, 510 (8th Cir. 1938), affg. 36 B.T.A. 593 (1937); *Hyde v. Commissioner*, 64 T.C. 300, 306 (1975).